LAND AUTHORITY OF PUERTO RICO, ETC., Appellant, v. REGISTRAR OF PROPERTY OF UTUADO, Respondent.

No. 1125. Submitted July 29, 1943.—Decided September 23, 1943.

484

*Francisco A. Arrillaga* and *C. del Toro Fernández* for appellant. The registrar appeared by brief.

Mr. Justice De Jesús delivered the opinion of the court.

Paolo Cabán and his wife, owners of a rural property having an area of 78.242 acres (*cuerdas*) recorded in their name in the Registry of Property of Utuado, segregated therefrom a parcel of 9 acres which they sold to the United States of America. The remaining portion of the property, which according to the registry should have contained 69.242 acres, was sold by Cabán and his wife to the Land Authority of Puerto Rico by deed No. 21, executed on June 4 last before Notary Francisco A. Arrillaga, the purchaser being represented by its executive director, Mr. José Acosta Velarde. It was stated in the deed that at present the area of said remaining portion, according to a survey made by engineers of the Land Authority of Puerto Rico, was 70.9506 acres. Upon presenting the deed in the registry, the registrar recorded it as to the sale, but only with respect to the area of 69.242 acres, as it appeared in the registry; he entered the curable defect of a failure to establish the appointment of José Acosta Velarde as executive director of the Land Authority of Puerto Rico, and denied the record as to

the excess area of 1.7086 acres. Feeling aggrieved by that decision, the Land Authority of Puerto Rico has taken the present administrative appeal.

■ I. The difference between the area stated in the deed and that appearing from the registry is only 1.7086 acres, an amount which does not reach 20 per cent of the area recorded. This difference may be recorded without the need of resorting to a dominion title proceeding. Such recording may be obtained by following the procedure established by the decisions, that is, by making a survey upon summoning the adjacent owners and establishing the survey as well as the summons and attaching to the deed a certificate of the surveyor to that effect.

The requirement of the summons is essential in order to prevent certain unscrupulous owners from increasing the true areas of their properties and using the registry as an instrument in order to defraud a third innocent party who contracts with them, trusting, naturally, that the entries in the registry are faithful statements of the facts.

Accordingly, in *Muriente* v. *Registrar*, 47 P.R.R. 232, 236, it was said:

"As far as we know, this court has never held, even in the case of a rural property, that a recital as to the existence of a specified excess said to have been established by a survey, without either a surveyor's certificate or any mention of notice to adjoining land owners, is enough to justify the recording of such excess."

And in *Pellón* v. *Registrar*, 53 P.R.R. 501, 505, it was again stated:

"In our judgment, no alteration or correction of boundaries nor the record of the resulting area should be allowed, even though the difference involved should not reach 20 per cent, without a prior survey made after summoning the adjoining landowners. See *Muriente* v. *Registrar, supra*, and *Aboy* v. *Registrar, supra*."

■ II. Challenging that part of the decision which considers as a curable defect the failure to establish that

José Acosta Velarde is appellant's executive director, counsel for the Land Authority argues that the function of the registrar in passing upon instruments is of a quasi judicial character and, therefore, that the registrar should have taken judicial notice of José Acosta Velarde's appointment to that office. It is true that §36 of the Law of Evidence, which is §398 of the Code of Civil Procedure (1933 ed.), provides that courts shall take judicial notice of the accession to office and the official signature and seals of office of the principal officers of Government in the legislative, executive, and judicial departments of Puerto Rico and of the United States. But this rule of evidence, although applicable by its own terms to the courts, is not applicable to the registries of property in so far as the function of passing upon instruments is concerned. This duty is regulated by §18 of the Mortgage Law which expressly provides that "registrars shall, under their responsibility, determine the legality of the instruments under which record is requested, and the capacity of the parties thereto, *upon the facts that appear from said instruments themselves.*" (Italics ours.) The registrar, in passing upon a document, does not decide questions of fact nor does he weigh the evidence. His mission consists in examining the authentic documents presented to him, whether principal or supplementary, in order to determine from their own terms or from the data or the antecedents appearing from the entries of the registry which relate to the document presented, whether the record or entry sought may be legally made. Commenting on said §18 of the Mortgage Law, Morell states:

"What was the intention of the lawmaker in requiring that the determination be made upon the facts appearing from the documents or instruments themselves? Undoubtedly it was sought to prevent the registrar from acting upon the basis of his personal knowledge or of private information obtained from a third person either orally or through the contents of other documents not presented for record, or from other offices, even though the same should be worthy of credit.

The determination, as expressly stated in §18 of the Law and Article No. 77 of the Regulations, must be made upon the facts that appear from the documents presented, and, therefore, not even the certain knowledge on the part of the registrar—derived from circumstances and other proof foreign to the title—that the facts alleged are not true would be sufficient. For the registrar there is no other proof that the one contained in the registry and in the titles to be recorded. (Decision of March 28, 1904.). Even where a crime has been committed, if such fact does not appear from the document, he can not refuse to record the latter, although this should not prevent him from taking such measures as his zeal and experience may render advisable in order to avoid the consequences of the recording. (Decisions of December 19, 1879 and October 21, 1893.)'' 2 *Legislación Hipotecaria*, 251.

Galindo and Escosura, in vol. 2, p. 10 of their work "*Legislación Hipotecaria*," state:

"We think that, by the use of the words "upon the facts that appear from said instruments," the Law merely sought to prevent the registrar from judging, upon his personal knowledge, of the capacity of the parties to the instruments, even though he might be certain of the inaccuracy contained in the document, and this is confirmed by the decisions of May 4, 1883 and June 18, 1898; but this does not mean that in every case the registrar must state the capacity of the contracting parties as proved by the mere assertion of the notary. (See decision of March 30, 1898 holding that, even though the notary asserts that, in his judgment, a widower has capacity to sell a property, the registrar can and should consider the deed as not recordable if from the registry it appears that said property was acquired by the vendor during his marriage, for a valuable consideration.) *Such an assertion would be sufficient as to the circumstances which determine the identity and capacity of the contracting parties to act in their own behalf; but it would be otherwise as to the circumstances which might cloth them with power to act on behalf of others and to bind third persons.* Thus, it is sufficient if the names, surnames, ages, civil status (See decisions of February 24, 1898) trade, and residence of the contracting parties are set forth in the instrument; because, according to Article 4 of the instructions of November 9, 1874, the notary must state all the circumstances which serve to establish the identity of the contracting party and his capacity to enter into contracts recordable in his own name as

said circumstances appear from his identification paper (*cédula personal*); as to this, there can be no determination. The notary does not pass upon those facts; he does not act upon the basis of reasoning or inferences formed in his mind; he merely certificates to facts set forth in a public instrument which the law commands him to accept without questioning them; the registrar has nothing to pass upon, because he is not expected to pass upon the recitals contained in the identification paper (*cedula*) nor upon any omission therefrom, in view of the assertion made by the attesting notary who is the person charged by law with that exclusive function by reason of his office." (Italics ours.)

It is true that in the deed of sale which has given rise to this appeal the notary copied the minutes of the Land Authority of Puerto Rico wherein its executive director was authorized to purchase for said agency the property in question, but, doubtless through some inadvertence, the name of the executive director was omitted. Under these circumstances, it was necessary, in order that he could purchase in the name of the Authority, to establish in an authentic manner that José Acosta Velarde legally occupied said office, it not being sufficient that the notary should state it, of his own initiative, in the deed of sale.

Appellant relies on *Orcasitas* v. *The Registrar of Property*, 21 P.R.R. 523, wherein a deed of judicial sale executed by Rafael Mas, sub-marshal of the district court, was presented and recorded and the registrar entered the curable defect that it failed to establish that said Rafael Mas was the sub-marshal. Upon affirming the decision appealed from this court said:

"The notary did not and should not certify of his personal knowledge that a particular person occupied a certain position or appeared in a certain character. A registrar in Porto Rico cannot take judicial notice of the sub-mashal of the district court in this case. Perhaps the registrar might take judicial notice of the office of the marshal, but ordinarily it is the marshal who should make a judicial sale, and when a sub-marshal makes a sale the registrar has a right to require that he prove that he is such sub-marshal and show his authority."

The error committed when speaking of judicial notice of the registrar consists in that §36 of the Law of Evidence is confused with §3 of the Mortgage Law which provides:

"In order to permit of the record of the instruments mentioned in the foregoing article, they must be embodied in a public instrument, final judgment, or authentic document, issued *by a judicial auhority,* or by the Government or its agents, in the form prescribed in the regulations."

When a clerk of the court issues a certified copy of a complaint to be entered in the registry pursuant to §91 of the Code of Civil Procedure, the registrar makes the entry without previously requiring the officer to issue a certificate establishing his appointment and the identity of his signature. It is not required from the marshal either who issues an order of attachment on real property and finally it is not required of any other administrative officer, who by law is authorized to certify acts or instruments. By failing to require this evidence, the registrar is not taking judicial notice of the signatures and of the appointments of these officers under §36 of the Law of Evidence. The fact is that each one of these instruments constitutes an authentic document in accordance with said §3 of the Mortgage Law and the registrar is bound to accept them as he accepts a public deed without requiring the notary to establish his signature and the legal occupancy of his office.

When a deed of judicial sale is executed the marshal must necessarily hold a public sale and the certificate of the sale must be signed by him. After this certificate is signed by the marshal, it becomes an authentic document under the provisions of §3 of the Mortgage Law, and since in order to record the deed of judicial sale the certificate of the public sale must be copied or attached separately to other documents, it is obvious that the signature and legal incumbency of the marshal appear in an authentic document, to wit, the

certificate of the public sale, and the deed may be recorded pursuant to §3 if the remaining legal requisites are complied with.

The result in *Orcasitas* v. *Registrar, supra,* may be either correct or incorrect, it depending on whether the appointment of the alleged officer and the incumbency of his office should appear in one of the authentic documents which the notary should have copied in the deed of sale or attached thereto. But whether or not it is correct, the doctrine laid down in said case is erroneous and should be considered as overruled.

Lastly, the fact that Mr. Acosta Velarde should appear in representation of the purchaser and not of the vendors does not cure the defect indicated by the registrar, because it is prevented by §1211 of the Civil Code, which provides:

"No one can contract in the name of another without being authorized by him or without having his legal representation according to law.

"A contract executed in the name of another by one who has neither his authorization nor legal representation shall be void, unless it should be ratified by the person in whose name it was executed before being revoked by the other contracting party."

This Section makes no distinction between the person who contracts in the name of the purchaser and the one who does it in representation of the vendor, and, therefore, this provision is equally applicable to both cases.

In our opinion, the decision appealed from is well-grounded in so far as this appeal is concerned and, therefore, it is affirmed.

Mr. Justice Snyder did not participate herein.